UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>FIRST KNOWLEDGE PARTNERS, INC.,<br><br>Debtor. | Chapter 7<br>Case No. 02-16649 (CJK) |
| JOHN J. AQUINO, TRUSTEE,<br><br>Plaintiff,<br><br>AMADEUS CAPITAL CORPORATION,<br>AMADEUS CAPITAL U.S. INC.,<br>MILES S. NADAL, ROBERT BALFOUR,<br>GAVIN SWARTZMAN, TREVOR<br>MAUNDER, DAVID G. ROBINSON<br>JAMES D. FISHER, DESZO HORVATH,<br>DAVID C. KASSIE, DEAN C. KEHLER,<br>ALLAN Z. LOREN, STEPHEN M.<br>PUSTIL, THOMAS VOLPE, DEREK<br>SMITH, and MICHAEL SIMONETTA,<br><br>Defendants. | Adversary Proceeding<br>No. 04-01288 (CJK) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
FOR WITHDRAWAL OF REFERENCE TO THE BANKRUPTCY COURT**

Pursuant to 28 U.S.C. Section 157(d) and Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, defendants Amadeus Capital Corporation, Amadeus Capital U.S. Inc., Miles S. Nadal, Robert Balfour, Gavin Swartzman, Trevor Maunder, and Michael Simonetta (collectively, the "Amadeus Defendants"), along with defendants Thomas Volpe, Derek Smith, Allan Z. Loren, James D. Fisher, and Dezsö J. Horváth (collectively, with the Amadeus Defendants, the "Moving Defendants") hereby move the District Court to withdraw to itself, in its entirety and for disposition of all matters relating thereto, the original reference of this

027.150479

Adversary Proceeding No. 04-01288 (CJK) to the Bankruptcy Court. Because the Moving Defendants are entitled to a jury trial on the claims raised in the Complaint, and because they have have not consented to a trial of these claims before the Bankruptcy Court, 28 U.S.C. Section 157(e) precludes the trial of these claims in Bankruptcy Court. Accordingly, this matter should be withdrawn from the Bankruptcy Court and heard by the District Court instead.

## I.  BACKGROUND

### A.  Pertinent Factual Background

The debtor in this case, First Knowledge Partners ("FKP"), was formed and incorporated in 1999, as a private equity venture engaged in the provision of management consulting services to high-growth organizations competing in the digital and telecommunications economy.[1] In hindsight, it is clear that the timing of this business venture was ill-fated, as it coincided with both the decline of the telecom industry generally and the economic downturn that followed the events of September 11, 2001. These market factors ultimately forced FKP – despite substantial efforts by its officers and directors to salvage its business – to file a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. That petition was filed on September 16, 2002.

### B.  The Trustee's Claims

Despite the nature of the economic events leading up to FKP's bankruptcy filing in 2002, on September 14, 2004, John J. Aquino, the Chapter 7 Trustee (the "Trustee"), commenced this Adversary Proceeding in which he entirely blames the defendants in this case for FKP's demise. The Trusee has, accordingly, asserted multiple claims seeking to recover money from the defendants for the benefit of FKP's estate (the "Estate").

---

[1]  FKP's two shareholders were Amadeus Capital Corp. ("Amadeus") and CIBC WMV, Inc.

### 1.     Claims against the Amadeus Defendants

Specifically, the Complaint alleges that one or more of the Amadeus Defendants engaged in preferential and fraudulent transfers (Counts I-VII) and breached their fiduciary duties to FKP (Count XVI). The Trustee has also demanded a turnover of property allegedly due to the Estate under promissory notes executed by certain of the Amadeus Defendants (Counts XI, XII, and XIV), and a declaratory judgment that Amadeus and Amadeus U.S., Inc. ("Amadeus U.S.," and together with Amadeus, the "Amadeus Entities") were alter-egos of FKP and that, therefore, the assets of the Amadeus Entities should be made available to satisfy the claims of FKP's creditors (Count VXIII), and that various of the Amadeus Defendants engaged in violations of M.G. L. ch. 93A (Count XVII). The Amadeus Defendants answered the Complaint on December 1, 2004, denying liability on the counts against them and demanding a trial by jury on the Trustee's claims. Significantly, none of the Amadeus Defendants have filed a proof of claim with the Bankruptcy Court or taken other actions that would submit them to a jury trial there. Indeed, the Amadeus Defendants have explicitly withheld consent to trial by jury in the Bankruptcy Court.

### 2.     Claims against Mr. Fisher and Mr. Horváth

The sole Count in the Complaint against defendants James D. Fisher and Dezsö J. Horváth is based upon the premise that they breached their fiduciary duties to FKP (Count XVI). In that Count, it is falsely alleged that Mr. Fisher and Mr. Horváth were officers, directors, employees, investors, shareholders, or consultants of defendant Amadeus and therefore were not "disinterested." In fact, Mr. Fisher and Mr. Horváth had no connection with Amadeus. Mr. Fisher and Mr. Horváth filed a motion to dismiss the Complaint on December 23, 2004, on the grounds that the exculpatory provision of FKP's Certificate of Incorporation prevents the

recovery of the Trustee's claim as a matter of law[2] and because this Court lacks personal jurisdiction over Mr. Fisher and Mr. Horváth, who are both Canadian citizens who live and work in Toronto. If the claim against Mr. Fisher and Mr. Horváth is not dismissed pursuant to their motion, they plan to assert numerous defenses in addition to the protection provided by FKP's exculpatory charter provision.

### 3.  Claims against Mr. Loren

The sole Count in the Complaint against Mr. Loren is based upon the premise that he breached his fiduciary duties to the debtor (Count XVI). In that Count, it is falsely alleged that Mr. Loren was an officer, director, employee, investor, shareholder, or consultant of defendant Amadeus and therefore was not disinterested. In fact, Mr. Loren had no connection with Amadeus. Accordingly, Mr. Loren filed a motion to dismiss the Complaint on December 23, 2004, on the grounds that the exculpatory provision of FKP's Certificate of Incorporation prevents the recovery of the Trustee's claim as a matter of law. If the claim against Mr. Loren is not dismissed pursuant to this motion, he plans to assert numerous defenses in addition to the protection provided by FKP's exculpatory charter provision.

### 4.  Claims against Mr. Smith and Mr. Volpe

Five of the 18 counts in the Complaint are directed at Mr. Smith as well as other defendants: Count VII (Preferential Transfer), Counts VIII-X (Fraudulent Transfer), Count XV (Turnover of Property) and Count XVI (Breach of Fiduciary Duty). In addition, a single claim – Count XV for Turnover of Property – is directed at Mr. Smith alone. Three counts are directed at Mr. Volpe (as well as at other defendants): Count VII (Preferential Transfer), Counts VIII (Fraudulent Transfer) and Count XVI (Breach of Fiduciary Duty).

---

[2]  On this point, Messrs. Fisher and Horváth incorporate by reference the arguments contained in the motion to withdraw the reference filed by defendant David G. Robinson.

In Count XVI (Breach of Fiduciary Duty), the Trustee falsely alleges that Mr. Smith, who worked for FKP for only one year,[3] and Mr. Volpe, who served as an outside FKP director for only eight months,[4] were both not "disinterested" because they were officers, directors, employees, investors, shareholders, or consultants of defendant Amadeus. In fact, neither Mr. Smith nor Mr. Volpe had any connection with Amadeus. With respect to that Breach of Fiduciary Duty claim, Mr. Volpe has filed a Motion to Dismiss Count XVI of the Complaint based on the exculpatory provision of FKP's Certificate of Incorporation, which, as a matter of law, prevents the recovery of the Trustee's claim as to former FKP directors like Mr. Volpe.[5]

Both Messrs. Smith and Volpe demanded jury trials in their answers, but expressly did *not* consent to trial by jury in the Bankruptcy Court, which, as is demonstrated herein, warrants the withdrawal of the reference. They also asserted affirmative defenses that included, without limitation, that the Complaint failed to state a claim upon which relief can be granted, that this action is not a core proceeding pursuant to 28 U.S.C. § 157, that FKP was not insolvent at the time of the payments alleged in the Complaint, and that the alleged payments were not preferential or otherwise avoidable transfers because, among other reasons, they were made in the ordinary course of business and were made in exchange for new value.

---

[3] Mr. Smith served as FKP's Chief Financial Officer from July 2000 to July 2001. See Smith's First Amended Answer, Affirmative Defenses and Jury Demand, Answer No. 24.

[4] Mr. Volpe served as an outside director of FKP from October 2001 to, at the latest, June 2002. See Affidavit of Thomas Volpe in Support of Motion to Dismiss ¶ 3, filed in support of Volpe's Motion to Dismiss Count XVI of the Complaint.

[5] Count XVI is a pre-petition non-core state law claim seeking money damages that consequently must be submitted to a jury. On this point, Messrs. Smith and Volpe incorporate by reference the arguments contained in the Memorandum of Law in Support of Motion of Defendant David G. Robinson for Withdrawal of Adversary Proceeding to the District Court, filed February 15, 2005.

## II. ARGUMENT

### A. Cause Exists To Withdraw the Reference Because the Moving Defendants are Entitled to a Jury Trial and Have Not Consented to a Jury Trial Before the Bankruptcy Court

Cases under the Bankruptcy Code, as well as all proceedings arising in or related to a case under the Bankruptcy Code, are automatically referred from the District Court to the Bankruptcy Court under the authority granted to District Courts by 28 U.S.C. § 157(a). However, 28 U.S.C. § 157(d) authorizes the District Court to *withdraw* the reference to the Bankruptcy Court in any case or proceeding on timely motion of any party, for "cause shown." 28 U.S.C. § 157(d). The Moving Defendants satisfy the criteria for withdrawal because (1) this motion is timely, and (2) "cause" exists, as the Moving Defendants are entitled to a jury trial here. Because the Bankruptcy Court lacks jurisdiction to conduct a jury trial absent consent of all parties, and because that consent that has not been given by the Moving Defendants[6], the reference to the Bankruptcy Court must be withdrawn in accordance with § 157(d).

#### 1. Absent Consent By all Parties, the Bankruptcy Court May Not Conduct A Jury Trial

It is well-settled that the Bankruptcy Court is not authorized to conduct a jury trial absent the consent of all parties involved. Indeed, the Bankruptcy Reform Act of 1994, 28 U.S.C. § 157(e) specifically provides that

> [i]f the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and *with the express consent of all the parties*.

---

[6] See e.g., Answers and Affirmative Defenses of Amadeus Capital Corp., Amadeus Capital U.S., Miles S. Nadal, Gavin Swartzman, Trevor Maunder, Robert Balfour, and Michael Simonetta; First Amended Answer, Affirmative Defenses and Jury Demand of Derek Smith; First Amended Answer, Affirmative Defenses and Jury Demand of Thomas Volpe; Motion to Dismiss of Allan Z. Loren; Motion to Dismiss of James D. Fisher; and Motion to Dismiss of Dezsö J. Horváth. None of the Moving Defendants have either waived their right to a jury trial or consented to such a trial before the Bankruptcy Court (nor do those Moving Defendants with pending motions to dismiss intend to do so should their motions be denied.)

28 U.S.C. § 157(e) (emphasis added). Thus, if the right to a jury trial exists in a proceeding, "bankruptcy courts are entitled to conduct jury trials if certain criteria are met, *but in all cases the parties must expressly consent to a jury trial before the Bankrutpcy Court.*" In re Lars, 290 B.R. 467, 469 n.4 (D. P.R. 2003) (emphasis in original).

Courts have therefore unequivocally held that where parties are entitled to a jury trial, and all parties have not explicitly consented to such a trial before the bankruptcy court, "cause" for withdrawal exists within the meaning of Section 157(d). See, e.g., In re Lars, 290 B.R. at 469-70 (D.R.P. 2003) (bankruptcy court's inability to conduct jury trial demanded by defendants constituted "cause" for withdrawal of reference); In re Malden Mills Inds., Inc., 277 B.R. 449, 455 n.4 (Bankr. D. Mass. 2002) (regardless of nature of proceeding, i.e., core versus non-core, the bankruptcy court may not conduct a jury trial absent consent of the parties); see also, In re Chestnut Hill Mortgage Corp., 156 B.R. 111, 112 (Bankr. D. Mass. 1993) (withdrawing reference because bankruptcy judges lack authority to conduct jury trials even in core proceedings). Thus where, as here, a right to a jury trial exists but the parties have not consented to have such a trial before the Bankruptcy Court, the reference must be withdrawn.

### 2. The Seventh Amendment Entitles the Moving Defendants to a Trial by Jury

The Moving Defendants are entitled to a trial by jury on the Trustee's claims because the Seventh Amendment provides that "in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." U.S. CONST. AMEND. VII. The United States Supreme Court has long interpreted the phrase "Suits at common law" to mean "suits in which *legal* rights were to be ascertained and determined, in contradiction to those where equitable rights alone were recognized and equitable remedies were administered." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41(1989) (internal citation omitted). The

Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common law causes of action ordinarily decided by English courts of law (as opposed to courts of equity or admiralty) in the late eighteenth century. Curtis v. Loether, 415 U.S. 189, 193 (1974).

In Granfinanciera S.A. v. Nordberg, in examining the parameters of the right granted under the Seventh Amendment, the United States Supreme Court considered this distinction between claims at law and those at equity. 492 U.S. 33, 43 (1989). Ultimately, the Court held that parties who had not submitted claims against the bankruptcy estate (thereby implicitly consenting to the bankruptcy court's jurisdiction) had the right to a jury trial in a suit by the trustee to recover allegedly fraudulent transfers. Id. In reaching this conclusion, the Supreme Court performed what amounted to a two-step analysis: first, comparing the action to eighteenth century actions brought in the English courts, and second, and more importantly, examining whether the claim sought a legal as opposed to an equitable remedy. Id. at 42. The first step of the analysis was not seriously in dispute: the Court reasoned that actions "to recover preferential or fraudulent transfers were often brought at law in late 18th-century England" and that these action, "like all suits at law, were conducted before juries" in a court of law rather than equity. Id. at 46.

Similarly, the Court found that the nature of the relief sought by the respondent – monetary relief – supported the finding that the right invoked should be characterized as legal rather than equitable. Id. at 47. The Court found further support for this position in Schoenthal v. Irving Trust Co., in which a trustee in bankruptcy who sued in equity to recover alleged preferential payments was rebuffed because he had an adequate remedy at law. 287 U.S. 92, 95 (1932). "There, as here, '[t]he preferences sued for were *money payments* of ascertained and

definite amounts,' and '[t]he bill discloses no facts that call for an accounting or other equitable relief.'" Granfinanciera, 492 U.S. at 49, quoting Schoenthal, 287 U.S. at 95 (emphasis added). "[A] court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action sounding in tort for money had and received." Granfinanciera, 492 U.S. at 47-48 (internal quotations omitted); Pernell v. Southall Realty, 416 U.S. 363, 370 (1974) ("[W]here an action is simply for the recovery ... of a money judgment, the action is one at law.").[7]

The holdings in Granfinanciera and Schoenthal make clear that the Trustee's claims for fraudulent and preferential transfers are subject to trial by jury.[8] See Granfinanciera, 492 U.S. at 49, Schoenthal, 287 U.S. at 95. Similarly, the claims for turnover of property to the estate -- claims which are, in substance, simply claims for money allegedly due under various promissory notes -- and the breach of fiduciary duty claim, are likewise indisputably claims for monetary recovery. The Trustee's claims can be fully satisfied by money damages; indeed, that is specifically what the Trustee has requested: a turnover of money to the estate.[9] However,

---

[7] Although the foregoing cases were decided before Congress authorized bankruptcy judges to conduct jury trials pursuant to Section 157(e), this fact does not alter their application to the facts at hand.

[8] The fact that fraudulent conveyance actions and preference actions are designated as "core proceedings," pursuant to 28 U.S.C. § 157(b)(2), which proceedings bankruptcy judges may hear and determine under 28 U.S.C. § 157(b)(1), does not abrogate a party's Seventh Amendment right to a jury trial in such proceedings. See Granfinanciera, 492 U.S. at 34 ("The Seventh Amendment entitles petitioners to their requested jury trial notwithstanding designation as "core proceedings"). Although Congress may limit the reach of the Seventh Amendment when it creates statutory "public rights" and assigns their adjudication to an administrative agency with which a jury trial would be incompatible, "[Congress] lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury." Id. at 51–52, citing Atlas Roofing Co. Inc. v. Occupational Safety and Health Review Comm'n, 430 U.S. 442, 450 (1977)). In Granfinanciera, the Supreme Court held that the right to recover a fraudulent conveyance is "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." Id. at 55.

[9] Indeed, a review of the Trustee's nineteen prayers for relief evidences twelve requests that the Bankruptcy Court "[e]nter a money judgment against the [Defendants]..." (Complaint, prayer, § (a)-(j), (p), (q)) and five requests for "monies due under [certain promissory notes]" (Complaint, prayer, § (k)-(o)).

"[w]henever one person has in his hands money equitably belonging to another, that other person may recover it by assumpsit for money had and received. *The remedy at law is adequate and complete.*" Granfinanciera, 492 U.S. at 48, 109 S.Ct. at 2793, quoting Gaines v. Miller, 111 U.S. 395, 397-98, 4 S.Ct. 426, 427 (1884) (empahsis added); accord, Pernell v. Southall Realty, 416 U.S. 363, 370 (1974).

The only remaining claim that could even arguably be characterized as equitable is the Trustee's request for a declaratory judgment. The Trustee's Count XVIII asks the Court to disregard the separate corporate identities of the Amadeus Entities and declare that these entities are, in fact, alter-egos of the Debtor. In substance, therefore, the Trustee has asserted this claim in an effort to access the assets of the Amadeus Entities – assets that he hopes to recover for the Estate. The recovery sought therefore demonstrates that this claim is simply another request for monetary relief and, as such, is properly characterized as a legal (rather than equitable) claim under the principles established above.[10]

Even assuming, *arguendo*, that this Court should determine that one or more of the claims in the Complaint are equitable rather than legal, federal law requires determination of the legal claims by jury trial *prior* to determination of the equitable claims in all but the most extreme cases. In Beacon Theater, Inc. v. Westover, the United States Supreme Court held that, where both legal and equitable issues are presented in a single case, "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior

---

[10] The only remaining prayer is for an award of interest, another clear example of a request for monetary relief. (Prayer, § (s)).

determination of equitable claims."[11] 359 U.S. 500, 510-11 (1959). Accordingly, even if this Court were to decide that some of the claims in the Complaint are inherently equitable, failure to withdraw the automatic reference of this adversary proceeding would violate the principle in Beacon Theaters if it allowed the bankruptcy court to move forward on any perceived equitable claims before the legal issues are addressed in a trial by jury. Id.

The fact that the Moving Defendants are entitled to a jury trial on, at a minimum, the fraudulent and preferential transfer claims, is dispositive. Because the Moving Defendants are entitled to a jury trial on these legal claims in advance of any claims that this Court might deem equitable, and because the Moving Defendants have *not* consented to a jury trial before the bankrutpcy court, cause for withdrawal exists within the meaning of Section 157(d).

### B.  This Motion is Timely

In addition to satisfying the causal element of Section 157(d), the Moving Defendants likewise have satisfied the timliness requirement. The Complaint in this case was filed on September 14, 2004, just over five months ago. Within this limited timeframe, each of the Moving Defendants has responded the Complaint as was immediately required, and the Moving Defendants have all worked collectively to prepare these motion papers. Document discovery between the parties is not yet underway, as neither the Moving Defendants nor the Trustee have served document requests (indeed, the Trustee is currently focused on obtaining documents from non-party Weil Gotshal & Manges LLP); no interrogatories have been served; initial disclosures have not been exchanged; no depositions have taken place; and the pretrial schedule has not even

---

[11] In this regard, it makes no difference if the equitable cause clearly outweighs the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved, the constitutional right to a jury trial must control. Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 491 (5th Cir. 1961).

been established. Under these circumstances, the Moving Defendants have filed a "timely motion" within the meaning of Section 157(d).

### CONCLUSION

For the foregoing reasons, the Moving Defendants respectfully request that the reference of Adversary Proceeding No. 04-01288 (CJK) be withdrawn to the District Court.

Respectfully submitted:

| | |
|---|---|
| AMADEUS CAPITAL CORPORATION, AMADEUS CAPITAL U.S. INC., MILES S. NADAL, GAVIN SWARTZMAN, TREVOR MAUNDER, ROBERT BALFOUR, and MICHAEL SIMONETTA, | THOMAS VOLPE, and DEREK SMITH, |
| By their attorneys, | By their attorneys, |
| /s/ Carrie J. Fletcher<br>Michael J. Tuteur, BBO No. 543780<br>Carrie J. Fletcher, BBO No. 642369<br>Erica Templeton Spencer, BBO No. 651967<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, 26th Floor<br>Boston, Massachusetts 02199<br>Tel. (617) 342-4000<br>Fax (617) 342-4001 | /s Benjamin B. Tymann<br>Peter A. Biagetti, BBO# 042310<br>Timothy J. Langella, BBO No. 542017<br>Stephen E. Cooper, BBO No. 646978<br>Benjamin B. Tymann, BBO No. 652011<br>MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Tel. (617) 542-6000<br>Fax (617) 542-2241 |

027.150479

| | |
|---|---|
| JAMES D. FISHER and DEZSÖ J. HORVÁTH,<br><br>By their attorneys,<br><br>/s/ Sean Paul Cronin<br>R. Todd Cronan, BBO No., 647117<br>Sean Paul Cronin, BBO No. 647117<br>GOODWIN PROCTER LLP<br>Exchange Place<br>Boston, MA 02109<br>Tel. (617) 570-1000<br>Fax (617) 523-1231 | ALLAN Z. LOREN<br><br>By his attorneys,<br><br>/s/ Eben A. Krim<br>Eben A. Krim, BBO No. 652506<br>PROSKAUER ROSE LLP<br>One International Place<br>Boston, MA 02110-2600<br>Tel: (617) 526-9600<br>Fax: (617) 526-9899<br><br>Christopher Wolf, admitted *pro hac vice*<br>Robert Bernstein, *pro hac vice* admission pending)<br>PROSKAUER ROSE LLP<br>1233 20th Street, N.W., Suite 800<br>Washington, D.C. 20036<br>Tel: (202) 416-6800<br>Fax: (202) 416-6899 |

Dated:     February 18, 2005