IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>FIRST KNOWLEDGE PARTNERS, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 02-16649 (RS) |
| JOHN J. AQUINO, TRUSTEE,<br><br>Plaintiff,<br>v.<br><br>AMADEUS CAPITAL CORPORATION, AMADEUS CAPITAL U.S. INC., MILES S. NADAL, ROBERT BALFOUR, GAVIN SWARTZMAN, TREVOR MAUNDER, DAVID G. ROBINSON, JAMES D. FISHER, DESZÖ HORVÁTH, DAVID C. KASSIE, DEAN C. KEHLER, ALLAN Z. LOREN, STEPHEN M. PUSTIL, THOMAS VOLPE, DEREK SMITH and MICHAEL SIMONETTA,<br><br>Defendants. | Adversary Proceeding No. 04-1288 (RS) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS
FOR WITHDRAWAL OF REFERENCE**

I. **INTRODUCTION**

John J. Aquino, Trustee, ("Plaintiff" or "Trustee") hereby opposes the Motions for

Withdrawal of Reference of Defendants Amadeus Capital Corporation ("Amadeus"), Amadeus

Capital U.S. Inc., Miles S. Nadal, Robert Balfour, Gavin Swartzman, Trevor Maunder, Michael

Simonetta, Thomas Volpe, Derek Smith, Allan Z. Loren, James D. Fisher and Dezso J. Horvath

1

and David G. Robinson (collectively the "Defendants").[1] Defendants have filed similar motions in which they profess withdrawal is appropriate based on their Seventh Amendment right to a jury trial and lack of consent to such trial in the bankruptcy court pursuant to 28 U.S.C. § 157(e). The Court, however, should deny Defendants' motions because the Defendants' request and entitlement to a jury trial, in and of itself, does not compel immediate withdrawal of the reference. Further, the adversary proceeding initiated by the Trustee constitutes a "core" proceeding under 28 U.S.C. § 157(b), thus falls within the jurisdiction of the bankruptcy court, and should remain in the court that has presided over it in excess of five months. Finally, judicial economy concerns strongly support the denial of the Defendants' motions to withdraw reference of this adversary proceeding. Defendants' motions come almost six months after the Trustee originally filed this adversary proceeding, and after the bankruptcy court and the parties have expended and committed substantial resources to this matter.

## II.    SUMMARY OF FACTS[2]

First Knowledge Partners, Inc. ("FKP" or "Debtor"), formed in 1999 with its principal place of business in Boston, Massachusetts, was in the business of providing management consulting services, focusing on the strategy, operations and organization of high growth entities competing in the digital economy. During FKP's corporate existence, the individual Defendants served, at one point or another, as officers and/or directors of FKP. The individual Defendants, however, simultaneously also served as employees, officers, directors and/or owners of Amadeus and/or had allegiances to Amadeus, FKP's majority shareholder.

---

[1] On March 1, 2005, just three days before the filing deadline for the instant Opposition, Defendants David Kassie and Dean Kehler joined Defendants in a request for withdrawal. Accordingly, the Trustee's Opposition opposes their motion as well.

[2] The facts set forth herein are based on the allegations in the Trustee's Complaint, filed on September 14, 2005, Docket Document No. 1.

2

From virtually the inception of FKP's corporate existence, Amadeus, by means of its controlling interest in FKP and through FKP's officers and directors caused FKP to transfer millions of dollars to Amadeus and/or its U.S. subsidiary, Amadeus Capital U.S. Inc. While these transfers were made under the pretexts of "management and consulting fees," "payment of operating costs" or "reimbursement of expenses," little or no management services were performed and, even if such services were performed, the fees were excessive, not based on arms length negotiations and disproportionate to any services provided. Further, no independent evaluation was even done to determine whether the payments were in consideration for actual services or expenses, or whether such purported services and/or expenses were necessary or represented fair market value. Moreover, no written agreement existed between FKP and Amadeus that permitting these excessive payments to be made to Amadeus.

As evidence of these exorbitant and fraudulent payments, the Trustee has cited to the following transfers: in 1999, FKP transferred $944,714 to Amadeus for "management fees," even though FKP had been incorporated only days prior to the year's end. In 2000 and 2001, FKP transferred $500,000 and $1,849,800 respectively to Amadeus for purported "management services." The 2001 transfers included a one million dollar "advance" to Amadeus pursuant to a purported "Management Services Agreement" which never existed. In 2002, FKP transferred $1,000,000 to Amadeus, again for purported management services. These payments - totaling over four million dollars in a little more than two years - are in addition to the excessive salaries that the directors and officers of FKP received. For example, in 2001, defendant David G. Robinson, president and chief executive officer of FKP, was paid a salary of $690,000 and defendant Derek Smith was paid a salary of $240,000 and reimbursed $233,000.

In this adversary proceeding, the Trustee seeks to recover certain cash assets arising from the exorbitant transfers and payments made to Amadeus, described above, as well as the excessive salaries and "reimbursements" paid to one or more officers and directors of FKP. Such transfers/payments and salaries or reimbursements were made at a time when FKP was insolvent or rendered FKP insolvent, thereby constituting fraudulent and/or preferential transfers, which are recoverable pursuant to the United States Bankruptcy Code ("Code") and applicable state law. Based on these facts, the Trustee has brought two counts of preferential transfers (Counts I & II) and four counts of fraudulent transfers (Counts III – VI) against Amadeus and Amadeus U.S. In addition, the Trustee seeks the turnover of property of Debtor's estate, in the form of debts owed by one or more of the Defendants pursuant to promissory notes executed in favor of the Debtor (Counts XI – XV). The Trustee also seeks damages from the former directors and officers of the FKP – all of whom were not disinterested – who presided over the fraudulent transfers to Amadeus, and its officers and directors, in breach of their fiduciary duties of loyalty, good faith, care and independence owed to FKP and its creditors (Counts VII (preferential transfers); Counts VIII-X (fraudulent transfers); and XVI (breach of fiduciary duty)). Finally, the Trustee seeks a declaratory judgment that Amadeus, and its U.S. subsidiary, Amadeus U.S., were alter egos of FKP, and that Amadeus and Amadeus U.S. should be collapsed so that the assets of Amadeus and Amadeus U.S. are made available to satisfy the claims of the Debtor's creditors (Count XVIII).[3]

### III.    PROCEDURAL HISTORY

On September 16, 2002, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, the Trustee was appointed over

---

[3] The Trustee has also brought a M.G.L. c. 93A claim against Amadeus, Amadeus U.S., and individual defendants Nadal, Balfour, Swartzman and Maunder (Count XVII).

the Debtor's estate and continues to serve in that capacity. The Trustee filed this adversary proceeding on September 14, 2004. In early to mid-December 2004, Defendants, at varying times, answered the Trustee's Complaint. On or about December 15, 2004, Robinson filed his Answer together with Counterclaims against the Trustee. In lieu of answers, three of the Defendants (Loren, Fisher and Horvath) filed Motions to Dismiss the complaint based on personal jurisdiction and/or on an alleged exculpatory provision in FKP's articles of incorporation. A few weeks later, Defendant Pustil filed a similar Motion to Dismiss based on similar grounds. Over the course of the next two months, the parties fully briefed these motions and filed extensive oppositions, replies and sur-replies. Thereafter, the Trustee filed motions to stay the Court's decision on Horvath's, Fisher's and Pustil's Motions to Dismiss in order to allow the Trustee an opportunity to review recently produced FKP corporate records/documents and to conduct limited discovery on jurisdiction. The parties fully briefed these motions for the Court as well and submitted oppositions and replies thereto. In addition to these motions, two discovery-related motions initiated by the Trustee, pertaining to third party document production and depositions, are fully briefed and pending before the bankruptcy court.[4]

IV.  **ARGUMENT**

    A.  **Defendants' Request for a Jury Trial and Refusal to Consent to a Such Trial in the Bankruptcy Court is Not Dispositive for Withdrawal.**

Defendants' request for withdrawal is based on their argument that they are entitled to a jury trial and that, because they do not consent to a jury trial in the bankruptcy court as required under § 157(e), the Court has cause to withdraw the reference. However, case law is clear that a "district court is not compelled to withdraw a reference simply because a party is entitled to a

---

[4] By agreement of the parties, the Court has scheduled a hearing for March 22, 2005 on the discovery-related motions.

5

jury trial." *In re Enron Power Marketing, Inc.* 2003 WL 68036 at *6 (S.D.N.Y. Jan. 8, 2003). In fact, "courts routinely deny motions to withdraw a reference despite a litigant's refusal to consent to a jury trial in bankruptcy court because of prevailing concerns about judicial economy." *McCord v. Papantoniou*, 316 B.R. 113, 125 (E.D.N.Y. 2004).

In *Goia Gucci v. Gucci*, 1997 WL 122838, at *1 (S.D.N.Y. Mar. 17, 1997), for example, the bankruptcy court denied the defendant's motion to withdraw the reference where the defendant did not consent to a bankruptcy jury trial under 28 U.S.C. § 157(e). There, the court reasoned that considerations of judicial economy compelled the bankruptcy court to retain the case for pretrial purposes. Similarly, in *In re Enron Corp*, 295 B.R. 21 (S.D.N.Y. June 23, 2003), the court denied the defendants' motion to withdraw the reference despite their request for a jury trial and lack of consent for such trial in the bankruptcy court based on the fact that the adversary proceeding involved core bankruptcy issues, and judicial efficiency and uniformity supported keeping the action in the bankruptcy court. In its decision, the court noted, "[t]he fact that defendants might ultimately request a jury trial in federal court is not dispositive." *Id.* at 28. "Courts have also recognized that it serves the interests of judicial economy and efficiency to keep an action in bankruptcy court for the resolution of pre-trial, managerial matters, even if the action will be ultimately transferred to the district court for trial." *Id. See also Adelphia Communications Corp. v. Rigas*, 2003 WL 21297258 at *3 (June 4, 2003) (denying motion to withdraw reference as premature in pre-trial stage of litigation.).

Withdrawal of this proceeding at this stage is premature and contradicts notions of judicial efficiency and uniformity. This case had been with the bankruptcy court for over five months. It would be a waste of scarce judicial resources to require the district court to duplicate the bankruptcy court's efforts, particularly in light of the magnitude of motions, some of which

are dispositive in nature, already filed by the parties that are under consideration by the bankruptcy court. Five (5) of the moving defendants in the motions to dismiss now pending in the bankruptcy court have argued that they matter should never reach trial because U.S. courts lack personal jurisdiction over them and/or they are insulated from liability by Delaware corporate law. The fact that Defendants *may* eventually have a jury trial in district court, should the case get to that stage, is not sufficient cause to withdraw the proceeding at this time. Defendants may renew their motion at a later point, as many courts suggest, if and when their request becomes ripe. For the moment, however, notions of judicial economy and uniformity dictate that the proceeding remain where it was commenced, before the court that specializes in these types of proceedings on a regular basis. As the court makes clear in *McCord*, "[t]he bankruptcy court is best situated to continue managing the pretrial process in this proceeding as it has since the Trustee commenced the adversary proceeding...." *McCord*, 316 B.R. at 126. After all, "[a] rule that would require a district court to withdraw reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and the bankruptcy courts." *In re Enron Power Marketing, Inc.* 2003 WL 68036 at *6 (S.D.N.Y. Jan. 8, 2003) (quoting *In re Kenai*, 136 B.R. 59, 61 (S.D.N.Y. 1992)).

It is worth noting that courts are even reluctant to withdraw the reference in *non-core* proceedings until a later point when a trial is actually warranted.[5] In *In re Enron Power*, the court decided against withdrawal after considering three pertinent factors: 1) is the case likely to reach trial; 2) will protracted discovery with court oversight be required; and 3) does the bankruptcy court have familiarity with the issues presented.  2003 WL 68036 at * 7, 11

---

[5] *See* Part IV(B)(1) for a discussion of whether the Trustee's claims are core or non-core claims.

(S.D.N.Y. Jan. 8, 2003). Here, the proceeding is at the preliminary stages and may be resolved by dispositive motions that are already before the bankruptcy court. Further, even at this early stage of the proceedings, there already exist discovery issues requiring the bankruptcy court's consideration and oversight, thus it is likely that there will be ongoing discovery matters that will necessitate the bankruptcy court's involvement in the future. Lastly, the facts and claims in this case beg the expertise and knowledge of the bankruptcy court. For example, the claims in this matter include seven (7) counts of fraudulent transfers, five (5) counts of turnover property, and three (3) counts of preferential transfers, as well as issues concerning fiduciary duties owed by the Defendants to creditors of the Debtor. Given the nature of the claims and the present stage of the proceedings, the bankruptcy court can more readily supervise and manage the case, unless and until a jury trial is necessary.

Finally, the Defendants here have failed to meet their burden of demonstrating that withdrawal of reference serves the interests of judicial economy and that they will be prejudiced by having the bankruptcy court oversee pretrial matters. Like the defendant in *McCord*, 316 B.R. 113, Defendants' motions to withdraw rely primarily on their demand for a jury trial and their lack of consent to a jury trial in the bankruptcy court. These facts, however, "fall short of demonstrating cause for this Court to withdraw reference." *Id.* at 126.

### B. It is Within the Court's Discretion to Maintain the Adversary Proceeding in the Bankruptcy Court.

The fact that defendants' request for a jury trial in district court is not alone determinative of whether or not withdrawal of reference is warranted necessitates that the Court examine additional factors routinely considered by courts in deciding the issue of withdrawal of reference to the district court.

Withdrawal of a reference may be either mandatory or permissive pursuant to 28 U.S.C. § 157(d).[6] With respect to discretionary withdrawal, a district court may, upon its discretion or upon timely motion of any party, withdraw the reference "for cause shown." While "cause" is not explicitly defined, courts routinely weigh a number of factors in making such a determination, including (i) whether the proceeding is core or non-core; (ii) efficient use of judicial resources, (iii) delay and costs to the parties; (iv) uniformity of the administration of the bankruptcy laws, and (v) expediting the bankruptcy process. *In re Enron Corp*, 295 B.R. at 25; *See In re Orion Pictures*, 4 F.3d 1095, 1101 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994). *See also In re Jackson Brook Institute, Inc.*, 280 B.R. 779, 782 (Bank. D. Maine 2002). Courts construe "cause" narrowly, so as not to provide an "escape hatch" out of bankruptcy court. *See In re CIS Corp.*, 188 B.R. 873, 877 (S.D.N.Y. 1995); *In re C-TC 9th Avenue Partnership*, 177 B.R. 760, 763 (N.D.N.Y. 1995); *In re Ionosphere Clubs, Inc.*, 103 B.R. 416, 419 (S.D.N.Y. 1989); *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986).

### 1.    The Trustee's Claims Constitute Core and Related Claims.

Whether a claim is core or non-core is the "most important factor" to consider when determining whether to withdraw the reference. *In re Enron Corp.*, 295 B.R. 21, 25 (S.D.N.Y. 2003) (quoting *In re Burger Boys, Inc.* 94 F.3d 755, 762 (2d Cir. 1996)).[7] While not entirely dispositive of the withdrawal analysis, the fact that claims are core claims does "strongly indicate that there is no cause to withdraw the reference." *In re Enron Corp.*, 295 B.R. at 26 (internal quotations omitted). Core proceedings are generally defined as "those that are unique to or

---

[6] It is well-established that mandatory withdrawal is narrowly applied and is only appropriate when a bankruptcy judge would have to conduct "significant interpretation," not merely application, of federal law apart from bankruptcy statutes. *In re Enron Power Mktg., Inc., 2003 WL 68036 at *4 (S.D.N.Y. Jan. 8, 2003)*. Situations in which courts have found "substantial and material" issues of federal statute interpretation include, for example, issues of first impression. *Id.* Such is not the case here, thus mandatory withdrawal is not applicable.

[7] Courts have continued to make the core/non-core determination even with the edition of § 157 (e). *In re Enron Power Mktg., 2003 WL 68036 at *6.*

uniquely affected by the bankruptcy proceedings, or directly affect a core bankruptcy function." *McCord*, 316 B.R. at 119; *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002). 28 U.S.C. § 157(b)(2) provides a non-exhaustive list of proceedings that have been deemed to be "core" over which the bankruptcy courts have jurisdiction. The list includes such things as "orders to turn over property of the estate," "proceedings to determine, avoid, or recover preferences," "proceedings to determine, avoid, or recover fraudulent conveyances," and "other proceedings affecting the liquidation of the assets of the estate."

Pursuant to 28 U.S.C. § 157(b)(2)(H), the fraudulent transfer claims set forth in the Trustee's Complaint (Counts III – VI and VIII – X) are core bankruptcy issues. Additionally, numerous courts have explicitly found that fraudulent conveyance claims are "core" under the Code. *See McCord*, 316 B.R. at 113; *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60 (1989) (indicating that Congress considered fraudulent conveyance actions "core" proceedings under § 157(b)(2)); *O'Neill v. New England Road, Inc.*, 2000 WL 435507 (D. Conn. Feb. 28, 2000) (finding primarily fraudulent conveyance action a "core" proceeding); *In re Enron Corp.*, 295 B.R. at 26 (holding fraudulent transfer claims as "core" under § 157(b)(2)). Similarly, the preference claims in the Complaint (Counts I, II and VII) are core bankruptcy claims pursuant to 28 U.S.C. § 157(b)(2)(F), and the turnover of property claims (Counts XI – XV) are deemed core claims under 28 U.S.C. § 157(b)(2)(E). Thus, there is no issue as to the nature of the fraudulent conveyance, preference and turnover claims presented by the Trustee in this matter as they are undoubtedly considered "core" claims and fall under the bankruptcy court's jurisdiction.

Bankruptcy courts can also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157 (c)(1). Fiduciary duty claims, for example, are not necessarily "core" claims, yet they have been held "sufficiently related to the

core proceedings to be heard by the bankruptcy court." *McCord*, 316 B.R. at 120. The Third Circuit, in *Pacor, Inc.v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) established the now prominent "related to" test. Under this broad test, a claim is related to a core bankruptcy proceeding if its outcome "could conceivably have *any* effect on the estate being administered in bankruptcy." *Id.* (emphasis supplied); *accord In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). This test was also accepted and applied by the United States Supreme Court. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6, 309-10 (1995) (finding sufficient relationship between execution of a supersedeas bond and debtor's bankruptcy claims). In the present case, not only is it true that the fiduciary claim (Count XVI) "could conceivably have any effect on the estate," *Pacor*, 743 F.2d at 994, but it is almost certain that the proceeding "could affect the amount of property available for distribution to creditors." *See O'Neill*, 2000 WL 435507, at *4. Moreover, it has even been held by some jurisdictions that claims involving breach of fiduciary duty are themselves core claims because they concern the administration of the estate. *See McCord*, 316 B.R. at 122, n. 11 (citing *Glinka v. Abraham & Rose Co. Ltd.*, 1994 WL 905714, at *8 (D. Vt. June 6, 1994)).

Finally, the remaining counts in the Trustee's Complaint - M.G.L. c. 93A (Count XVII) and alter ego liability (Count XVIII) - are also related to the bankruptcy proceeding under the well-established "related to" test set forth in *Pacor*. Because the outcome of each of these claims "could conceivably have *any* effect on the estate being administered in bankruptcy," the claims are subject to jurisdiction in the bankruptcy court. *See id.* at 994. Furthermore, even in the absence of a finding that these counts are related to the bankruptcy proceeding, the action should remain subject to jurisdiction in the bankruptcy court. Severing these claims from the claims of fraudulent conveyance, preferences and turnover "would risk duplicative presentations on

substantially overlapping factual matters" and "[s]uch a process would cause unnecessary delay and deplete both judicial resources and the assets of the bankruptcy estate." *McCord*, 316 B.R. at 126 (quoting *In re Green*, 200 B.R. 296, 299 (S.D.N.Y. 1996)) (internal quotations omitted). Accordingly, the claims brought by the Trustee, the majority of which are expressly deemed to constitute core claims, fall within the bankruptcy court's jurisdiction, thus the proceeding should remain with the bankruptcy court, and the Court should find that there is no cause for withdrawal.[8]

### 2. Additional Factors Such as Judicial Economy, Delay and Costs to the Parties, and Expeditious Resolution of the Process Further Support the Trustee's Position that Withdrawal is Not Warranted.

Once a Court has made the core/non-core determination, it must then consider additional factors, such as the efficient use of judicial resources, delay and costs to the parties, uniformity in the administration of the bankruptcy laws and expediting the bankruptcy process. *In re Orion*, 4 F.3d at 1101.

As previously discussed in Part IV(B)(2), it would be an inefficient use of judicial resource to withdraw this core proceeding from the bankruptcy court at this stage of the litigation. First, the bankruptcy court is more familiar with the facts and issues involved in this proceeding. There are 16 defendants involved in this matter, various corporations, complex corporate structures and extensive voluminous filings. The bankruptcy court has managed this case for almost six months and is now actively engaged in the proceeding with various dispositive and discovery motions under its consideration. The bankruptcy court is thus best situated to continue to handle and manage the proceeding given the time and resources it has

---

[8] It is worth noting that the Defendants do not appear to dispute the fact that the proceeding is a "core" proceeding. *See generally* Defendants' Memorandum in Support of Defendants' Motion for Withdrawal of Reference to the Bankruptcy Court. While Robinson attempts to characterize the Trustee's claims as "non-core state law tort claims," *see* Memorandum in Support of Motion of Robinson for Withdrawal of Adversary Proceeding to the District Court at p. 5, "the fact alone that matters of state law are part of a proceeding does not render that proceeding non-core." *McCord*, 316 B.R. at 119 (citing 28 U.S.C. § 157(b)(3)).

already expended on this matter. Withdrawing the proceeding at this juncture would also inevitably duplicate the parties' efforts, as well as require the parties to expend additional costs and resources which would further deplete the assets of the bankruptcy estate. Even more importantly, withdrawal at this stage will delay the proceeding unnecessarily. The factors, as well as the fact that the claims present in this case constitute core and related claims, mitigate strongly in favor of keeping the adversary proceeding with the bankruptcy court.

      **C.**    **The Defendants' Motions to Withdraw the Reference Should Be Denied Because They Are Not Timely.**

Pursuant to 28 U.S.C. § 157(d), a motion to withdraw the reference must be timely. Although "timely" is not defined therein, courts generally find that a motion is timely if it is filed as soon as the grounds for withdrawal become clear. *See, e.g., Lame v. Gross*, 128 B.R. 588, 589 (D. Me. 1991) (motion not timely where defendants did not seek withdrawal when grounds became clear, and after bankruptcy court had invested significant amount of time and energy in the case); *In re Stavriotis*, 111 B.R. 154, 158 (Bankr. N.D. Ill. 1990) (motion not timely when filed as soon as movant realized that withdrawal might be to its advantage). The purpose of the timeliness requirement is to protect the court and the parties in interest from "useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics." *In re Giorgio*, 50 B.R. 327, 328 (D.R.I. 1985). Furthermore, lack of prejudice to either the debtor or the bankruptcy estate is not grounds for allowing an untimely motion for withdrawal. *See Stavriotis*, 111 B.R. at 154.

Here, the Defendants were aware of any alleged grounds for withdrawal immediately upon receipt of the Complaint on September 14, 2004. The Defendants, however, did not move to withdraw the reference upon service of the Trustee's Complaint, nor did they move to withdraw the reference before filing several motions beginning in December, 2004. Instead, the

13

Defendants did not file their Motions to Withdraw until mid- February, 2005, *more than five months* after the alleged grounds for withdrawal must have become apparent to them. Despite this, Defendants contend that a delay of over five months is reasonable, and thus their motion is timely. They base this argument on the fact that discovery is not yet underway. *See* Defendants' Motion to Withdraw the Reference, p. 11. This reasoning is flawed. First, Robinson has served requests for production of documents and interrogatories on the Trustee, responses to which are due by March 18, 2005. Second, it is indisputable that the parties and the Court have expended great resources in this action already. In less than six (6) months, there have been approximately 212 filings to date, including seven (7) motions for extensions of time by the Defendants. The Defendants have been actively engaging in this litigation in bankruptcy court and filing affirmative motions, several of which are dispositive in nature, for many months. The collective parties' motions, and the bankruptcy court's consideration of those motions, indicate that the Defendants' motions for withdrawal are not timely and that their delay has, in fact, resulted in considerable cost and inconvenience to all involved.

### D. Robinson Waived His Right to a Jury Trial in the District Court by Filing Counterclaims in the Bankruptcy Court.

On December 15, 2004, Robinson submitted counterclaims in response to the Trustee's Complaint. In doing so, he filed claims against the bankruptcy estate and consented to the bankruptcy court's jurisdiction over the action. The Supreme Court has repeatedly found that when a defendant files a claim against a bankruptcy estate, he subjects himself to the bankruptcy court's equitable power. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989)); *see also Katchen v. Landy*, 382 U.S. 323, 336 (1966). A defendant's claim to a jury trial on a bankruptcy trustee's claim "depends upon whether the [defendant] has submitted a claim against the estate." *Langenkamp*, 498 at 45

(finding that the defendants had waived their right to jury trial by submitting counterclaims); *see also McCord*, 316 B.R. at 124, n. 15 ("[a] defendant who files a counterclaim in a bankruptcy proceeding is deemed to have consented to the bankruptcy court's jurisdiction and waived any demand for a jury trial in the district court"). Accordingly, the Court should deny Robinson's Motion for Withdrawal of Reference outright since, by his very own actions, he has consented to the bankruptcy court's jurisdiction and waived any right to a jury trial in district court.

## V.   CONCLUSION

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that this Court deny Defendants' motions for withdrawal of reference and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOHN J. AQUINO, TRUSTEE
By his attorneys,

  /s/ Josefina Martinez
Charles A. Dale, BBO No. 558839
cdale@ghlaw.com
Daniel J. Kelly, BBO No. 553926
dkelly@ghlaw.com
Josefina Martinez, BBO No. 567687
jmartinez@ghlaw.com
Kristin M. Cataldo, BBO No. 654033
kcataldo@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated:  March 4, 2005

B0403609v1

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>FIRST KNOWLEDGE PARTNERS, INC.,<br><br>               Debtor. | Chapter 7<br><br>Case No. 02-16649 (CJK) |
| JOHN J. AQUINO, TRUSTEE,<br><br>               Plaintiff,<br>v.<br><br>AMADEUS CAPITAL CORPORATION, AMADEUS CAPITAL U.S. INC., MILES S. NADAL, ROBERT BALFOUR, GAVIN SWARTZMAN, TREVOR MAUNDER, DAVID G. ROBINSON, JAMES D. FISHER, DESZÖ HORVÁTH, DAVID C. KASSIE, DEAN C. KEHLER, ALLAN Z. LOREN, STEPHEN M. PUSTIL, THOMAS VOLPE, DEREK SMITH and MICHAEL SIMONETTA,<br><br>               Defendants. | Adversary Proceeding No. 04-1288 (CJK) |

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and accurate copy of <u>Plaintiff's Opposition to Defendants' Motions for Withdrawal of Reference</u> to be served upon counsel of record **via e-mail** to the following:

scooper@mintz.com

wdonovan@burnslev.com

cfletcher@foley.com

espencer@foley.com

awalker@mintz.com

**and via first class mail postage pre-paid** upon the following:

| | |
|---|---|
| Robert T. Graffum<br>Skadden, Arps, Slate, Meagher<br>& Flom LLP<br>One Beacon Street<br>Boston, Massachusetts 02109 | Christopher Wolf<br>1233 20th Street, N.W.<br>Suite 800<br>Washington, DC 20036 |
| R. Todd Cronan<br>Goodwin Proctor LLP<br>Exchange Place<br>Boston, MA 02109 | Eben A. Krim<br>Proskauer Rose LLP<br>One International Place<br>Boston, MA 02110 |

Eric M. Davis
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19801


Dated:  March 4, 2005

/s/ Josefina Martinez
Josefina Martinez